UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MELVIN J. KELLY, | CASE NO. C16-522 RSM |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| WASHINGTON STATE DEPARTMENT OF TRANSPORTATION, *et al.*, | |
| Defendants. | |

## I.     INTRODUCTION

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. #17. Plaintiff filed suit alleging discrimination on the basis of race under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e–2000e–17) ("Title VII"), age under the Age Discrimination in Employment Act of 1967 (29 U.S.C. §§ 621–634) ("ADEA"), and disability under Title I of the Americans with Disabilities Act (42 U.S.C. §§ 12111–12117) ("ADA"). Plaintiff also alleges unlawful retaliation. Defendants' motion seeks summary judgment on all claims for a variety of reasons. Neither party has requested oral argument and the Court finds oral argument unnecessary to its resolution of the Motion. The Court, having reviewed the record and for the following reasons, grants Defendants' Motion for Summary Judgment.

ORDER – 1

## II.    BACKGROUND

Plaintiff, Melvin J. Kelly, filed this action on April 19, 2016.  Dkt. #3.  Plaintiff sued his former employer, Washington State Department of Transportation ("WSDOT"), and several supervisors (collectively, the "State Defendants") alleging that he was discriminated against on the basis of his age, race, and disability and that he was subsequently retaliated against.  Dkt. #3 at 1–2.[1]  Plaintiff's Complaint appears to only seek monetary relief.  *Id.* at 5 ("had I not suffered deprivation, emotional distress, discrimination, and [State Defendants] had engaged then I would have earned around $345,600.00 up till retirement age, and whatever the court wishes to add for the emotional stress and failure to engage").

Plaintiff, who is African American, was employed as a custodian by WSDOT starting in October, 1985.  *Id.* at 2.  Plaintiff's "performance reviews to the best of [his] knowledge were always good during [his] employment."  *Id.* at 3.  Plaintiff worked hard to improve the conditions within WSDOT facilities, but his efforts were not recognized.  *Id.*

Plaintiff alleges that he encountered discrimination during the course of his employment. Plaintiff recounts an incident where a supervisor left magazines containing overtly racist pictures and statements in a work area where Plaintiff and a co-worker found them.  *Id.* at 4.  This supervisor was responsible for training many staff and Plaintiff believes the supervisor conveyed a discriminatory culture to the organization.  *Id.*  Plaintiff was not provided with a newer work vehicle while other white employees were.  Dkt. #17-3 at ¶ 7.  At one point, Plaintiff and another African American employee were segregated to a separate office space while white coworkers

---

[1] Plaintiff also sued the Washington Federation of State Employees Union and his Union Representative for "non support."  Dkt. #3 at 2.  The record does not contain any indication that these two Defendants have been served and they have not appeared in this matter.

ORDER – 2

worked in the same area and, as a result, enjoyed greater opportunities to advance their careers. Dkt. #3 at 3.

Without the benefits provided his white coworkers, Plaintiff pursued other opportunities for promotions or pay increases, including additional training, but was told that those opportunities were not available. *Id.* at 3. At the same time, Plaintiff observed that other white employees were given on the job training and increased job responsibilities. *Id.* Plaintiff was forced to work excessive hours in an effort to advance his career. *Id.* at 4. Additionally, Plaintiff observed that an African American co-worker was terminated because there was not enough work, but that the position was subsequently recreated due to a need for additional workers. *Id.*

On February 7, 2013, and in part due to his excessive work, Plaintiff was injured on the job. *Id.* at 2. Following his accident, Plaintiff alleges that he was bounced between numerous individuals and did not receive satisfactory assistance in returning to work like the assistance that other white employees received. *Id.* at 4. At some point following his accident, Plaintiff sought a specific position but was not selected and was told "that seniority, race and age had no bearing on [the] decision." *Id.* Ultimately, Plaintiff returned to work in September, 2013. *Id.* at 2. In November, 2013, presumably after performing his job in a satisfactory manner, Plaintiff was "told to go home because [he] could not climb ladders." *Id.* at 2.

Since that time, Plaintiff has sought to return to work on "light duty" but has not been returned to work. *Id.* On April 28, 2015, Plaintiff was offered an accommodated position that conformed to Plaintiff's work restrictions following an April 7, 2015 medical evaluation. Dkt. #17-4 at 4–5 (Ex. 1). Plaintiff did not believe that he could perform the work and did not accept the offer. Dkt. #17-5 at 7–11 (Ex. 2). Plaintiff became increasingly more difficult to contact in April and May of 2015. Dkt. #17-5 at ¶ 12. State Defendants' last direct contact with Plaintiff

ORDER – 3

was on April 8, 2015, on an unrelated matter. Dkt. #17-4 at 11–12 (Ex. 3). State Defendants attempted to contact Plaintiff on April 13, 15, 24, 25, 28, and 30, 2015, but were unsuccessful. *Id.* at 7–12 (Exs. 2 and 3). Plaintiff also failed to contact his "Time Keeper for the pay periods March 31, 2015, April 15, 2015, and April 30, 2015." *Id.* at 11–12 (Ex. 3). This violated Plaintiff's labor agreement and, under the terms of the agreement, created a presumption that Plaintiff had resigned. *Id.* Plaintiff was notified of State Defendants' understanding that he had resigned and did not take any action to indicate otherwise. *Id.* Accordingly, State Defendants terminated Plaintiff's employment on May 26, 2015. Dkt. #17-4 at ¶ 15.

Following his termination, Plaintiff filed a formal complaint with EEOC because the State Defendants were not engaging in ongoing communications. Dkt. #3 at 4. The State Defendants denied any discrimination and asserted that Plaintiff was fired for "being on unapproved leave" and for failing to communicate. *Id.* at 4.

## III.   DISCUSSION

### A.  Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

ORDER – 4

The non-moving party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 251. Neither will uncorroborated allegations and self-serving testimony create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987). Rather, the non-moving party must make a "sufficient showing on [each] essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## B. Plaintiff Fails to Adequately Respond

Plaintiff, who is pro se, has not responded substantively to State Defendants' Motion. Plaintiff's Response argues the factual assertions of the State Defendants' Motion through unsubstantiated allegations, but does not provide any evidence or authority in support of Plaintiff's claims. *See* Dkt. #18. The Court is to construe Plaintiff's prior pleadings liberally. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants."). But, "[h]e who proceeds pro se with full knowledge and understanding of the risks does so with no greater rights than a litigant represented by a lawyer, and the trial court is under no obligation to . . . assist and guide the pro se layman[.]" *Jacobsen v. Filler*, 790 F.2d 1362, 1365, n. 5 (9th Cir. 1986) (quoting *United States v. Pinkey*, 548 F.2d 305 (10th Cir. 1977)).

ORDER – 5

Plaintiff has presented no evidence whatsoever to contradict the facts established by State Defendants. The Court cannot create a genuine dispute as to a material fact where Plaintiff has not submitted any evidence contradicting State Defendants' evidence and relies only on unsworn, self-serving testimony. On the record, reasonable persons would have no basis to disagree with State Defendants' uncontroverted evidence. *Rodarte v. Trident Seafoods Corp.*, No. C13-1028JLR, 2014 WL 4113599, at *3 (W.D. Wash. Aug. 20, 2014) (citing *Aydin Corp v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983)). Even so, summary judgment cannot be granted as a matter of course and the moving party must still satisfy its burden of showing that it is entitled to judgment as a matter of law under Federal Rule of Civil Procedure 56. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

## C. Plaintiff's Claims Against Individual State Defendants Fail

State Defendants correctly argue that individual WSDOT employees cannot be liable to Plaintiff for damages under Title VII, the ADEA, or the ADA. *See Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 587 (9th Cir. 1993) (noting that individual employees do not bear liability under Title VII and the ADEA as Congress only imposed liability on employers); *Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033, 1037–38 (9th Cir. 2006) (holding that "*Miller's* bar on suits against individual defendants also applies to suits brought under Title I of the ADA"). Accordingly, Plaintiff's claims against Lora Eng, Dave McCormick, Andy Blomber, and Annie Morris in their individual capacities are dismissed.

## D. Plaintiff's ADEA and ADA Claims Against State Defendants Fail

State Defendants correctly argue that Plaintiff's ADA claims are barred by the Eleventh Amendment. U.S. CONST. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

ORDER – 6

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). Congress, in passing the ADA, did not validly abrogate the States' sovereign immunity. *See Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001). Likewise, Washington has not waived sovereign immunity with regard to claims filed under the ADA. *See Harrell v. Washington State Dep't of Soc. Health Services*, 170 Wash. App. 386, 404, 285 P.3d 159, 169 (2012) (finding that Washington had not waived its sovereign immunity as to ADA claims filed in state courts). Accordingly, dismissal of Plaintiff's ADA claims is proper.

Similarly, the Eleventh Amendment bars Plaintiff's ADEA claims. The Supreme Court has held that while Congress intended to eliminate Eleventh Amendment sovereign immunity under the ADEA, Congress did not have the power to validly accomplish its intent. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91 (2000) ("The ADEA's purported abrogation of the States' sovereign immunity is accordingly invalid."). Plaintiff points to no authority indicating that Washington has waived its sovereign immunity with regard to claims filed under the ADEA. Accordingly, Plaintiff's claims under both the ADEA and the ADA are dismissed.

**E. Plaintiff's Title VII Claims Against State Defendants Fail**

Title VII, prohibits discrimination on account of an "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Discriminatory disparate treatment occurs "where an employer has 'treated [a] particular person less favorably than others because of' a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985–986 (1988)). Discrimination cases are often considered under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973). Under *McDonnell Douglas*, a plaintiff must rise an inference of discrimination at which time the burden "shifts to the defendant to articulate a legitimate nondiscriminatory reason for

ORDER – 7

its employment decision." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (quoting *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985), *as amended*, 784 F.2d 1407 (1986)). If the defendant succeeds, then to defeat summary judgment, the plaintiff must demonstrate that the "articulated reason is a pretext for unlawful discrimination by 'either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Aragon v. Republic Silver State Disposal, Ind.*, 292 F.3d 654, 658–9 (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quotation marks and string citation omitted). "Although intermediate burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

A plaintiff can raise an inference of discrimination, a prima facie case, by direct or circumstantial evidence of discrimination or by the plaintiff showing that: (1) he is a member of a protected class, (2) he was qualified for his position, (3) he was subject to an adverse employment action, and (4) similarly situated employees outside the protected class were treated more favorably. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). Here, Plaintiff cannot make a prima facie case of racial discrimination.

The only adverse employment action upon which Plaintiff's claims can rest is his ultimate termination. Under Title VII, a plaintiff must first file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the "alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). "[A] claim of discrimination under the Act will not be sustained if it is based on an event or events that occurred more than 300 days before the filing

ORDER – 8

of the charge." *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1107 (9th Cir. 1998). Here, Plaintiff filed his EEOC charge on July 22, 2015, meaning that only actions after September 4, 2014, can form the proper basis for a Title VII claim. Dkt. #17-2 at 10–12 (Ex. 2). The only adverse action occurring within that time period was Plaintiff's May 26, 2015 termination.

Plaintiff does not establish an inference that WSDOT's decision to terminate him was the result of racial animus. The only circumstantial evidence of discrimination that Plaintiff alleges is a past incident where Plaintiff and a coworker discovered magazines with racist content that belonged to a supervisor who mentored many of the employees. From those facts, Plaintiff believes that the workplace developed a discriminatory mindset that "only white individuals should run the org[anization]." Dkt. #3 at 4. But this does not raise an inference that discriminatory intent permeated the ultimate decision to terminate Plaintiff. Plaintiff also cannot rely on an inference arising as a result of similarly situated individuals outside of his protective class being treated disparately. Plaintiff does not point to any individuals, similarly situated or otherwise, who were not presumed to have resigned after being absent for three consecutive days without leave and for failing to contact their Time Keeper for three consecutive pay periods. Thus, Plaintiff has failed to raise an inference of discrimination.

Even if Plaintiff could establish a prima facie case, State Defendants offer a legitimate business reason for the termination and Plaintiff cannot demonstrate that the reason is merely pretext for unlawful discrimination. State Defendants maintain, as they did at the time of termination, that Plaintiff was terminated because he failed to communicate with State Defendants, had failed to report to his Time Keeper for three pay periods, and was absent without authorized leave and failed to contact State Defendants for a period of three consecutive days. Dkt. #17 at 14–15 n.26. Plaintiff points to no evidence establishing that State Defendants'

ORDER – 9

decision to terminate him was because of his race. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) ("Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome.").

Pretext can be established by showing "that a discriminatory reason more likely motivated the employer" or "that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S.at 256. But "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993). "'[V]ery little' direct evidence of [a] discriminatory motive is sufficient." *Winarto v. Toshiba America Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001). But where circumstantial evidence is used, "a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) (citations omitted). Here, Plaintiff has provided no proof that his termination was motivated by racial animus and Plaintiff's vague allegations of events that led to his perception of discrimination within the workplace are not sufficient to conclude that Plaintiff was likely terminated because of his race. As a result, Plaintiff's Title VII claims against State Defendants are dismissed.

## F. Plaintiff's Retaliation Claims Against State Defendants Fail

Under the Title VII, retaliation claims are also considered under the burden shifting of *McDonnell Douglas*. *See Surrell v. Cal. Water Service Co.*, 518 F.3d 1097 (9th Cir. 2008). A plaintiff presents a prima facie case by establishing "(1) involvement in protected activity opposing an unlawful employment practice, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse action." *Freitag v. Ayers*, 468 F.3d 528, 541

(9th Cir. 2006). Here, Plaintiff's claims fail for the same reasons as his discrimination claims. The record does contain instances of Plaintiff complaining to State Defendants of discrimination (presumably on the basis of his race), but Plaintiff offers no proof that those complaints played any part in the decision to terminate him. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) (plaintiff's ultimate burden is to show that the adverse employment action would not have occurred but for the protected activity). Plaintiff's retaliation claims against State Defendants are properly dismissed.

### G. Plaintiff's Remaining Claims Fail

Plaintiff's only remaining claims are against Defendants Washington Federation of State Employees Labor Union and Addley Tole[2] ("Union Defendants"). Where a plaintiff proceeds *in forma pauperis*, as Plaintiff does here, the court is to dismiss the action, at any time, if it fails to state a claim, raises frivolous or malicious claims, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). Plaintiff does not allege that Union Defendants were his employer and, for that reason and the reasons above, any claims under Title VII, the ADEA, or the ADA fail to state a claim against Union Defendants. Plaintiff's only remaining claims appear to be for "non support" by Union Defendants.

Because federal courts are courts of limited jurisdiction, a plaintiff bears the burden of establishing that a case is properly filed in federal court. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 957 (9th Cir. 2001). The two main bases for federal court jurisdiction are federal question jurisdiction, where a plaintiff pleads a "colorable claim 'rising under' the Constitution or laws of the United States," and diversity jurisdiction, where a claim is "between parties of diverse

---

[2] Addley Tole appears to be Plaintiff's Union Representative.

ORDER – 11

citizenship [and] exceeds the required jurisdictional amount, currently set at $75,000. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (citations omitted). To the extent Plaintiff's claims for "non support" against Union Defendants is a cognizable legal claim, it does not appear to arise under any federal law or the Constitution. Further, Plaintiff does not appear to allege facts sufficient to establish the Court's diversity jurisdiction and all of the parties appear to be citizens of Washington. Accordingly, the Court dismisses Plaintiff's claims against the Union Defendants as outside of this Court's subject matter jurisdiction and because they fail to state a claim.[3]

Ordinarily, leave to amend a complaint should be freely given following an order of dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile.") (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990)). Here, leave to amend would be futile. Plaintiff's claims against Union Defendants do not appear actionable and the Court does not appear to have subject matter jurisdiction over Plaintiff's remaining claims. Accordingly, the Court does not grant Plaintiff leave to amend his Complaint.

## IV.  CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS:

---

[3] The Court also notes that there is no indication in the record that Union Defendants have ever been served and they have not appeared in this action. *Cf.* dkts. #6 and #7 (Plaintiff's affidavit of mailing process to State Defendants and notice of appearance of State Defendants. Federal Rule of Civil Procedure 4(m) required Plaintiff to serve process on Union Defendants "within 90 days after the complaint is filed." Fed. R. Civ. P. 4(m). The Complaint in this action was filed on April 19, 2016.

ORDER – 12

1) Defendants' Motion for Summary Judgment (Dkt. #17) is GRANTED and all of Plaintiff's claims against the Washington State Department of Transportation, Lora Eng, Dave McCormick, Andy Blomber, and Annie Morris are DISMISSED.

2) Plaintiff's claims against the Washington Federation of State Employees Labor Union and Addley Tole are DISMISSED.

3) This matter is now CLOSED.


DATED this 22 day of October 2018.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 13